**E-FILED on**   9/13/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANET MATTSON,<br><br>      Plaintiff,<br><br>      v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>      Defendant. | No. C-04-02477 RMW<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT REMANDING CASE |

**I. INTRODUCTION**

Plaintiff Janet Mattson ("Mattson") brings this action under 42 U.S.C. § 405(g) to obtain review of the Commissioner's decision denying her claim for Social Security disability insurance benefits. Mattson applied for benefits on February 19, 1998. Administrative Transcript ("Tr.") 96. The Secretary denied this application. Mattson filed another application for benefits on October 29, 2001, alleging that she was "disabled" due to urticaria,[1] stress, anxiety, depression, back problems, recovering alcoholism, bronchitis, balance problems, and not being able to use her left wrist. Tr. 99. The Secretary denied Mattson's claim initially and upon reconsideration. Tr. 73-90. Mattson requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on October 21,

---

[1] Urticuria is a transient condition of the skin, usually caused by an allergic reaction, characterized by pale or reddened irregular, elevated patches and severe itching, hives.

1  2003. On December 19, 2003 the ALJ found that Mattson was "not disabled." Tr. 14-23. The
2  Appeals Council denied Mattson's request for review on May 13, 2004. Tr. 5-7. On June 22, 2004
3  Mattson filed a complaint in this court. The parties have cross-moved for summary judgment. For
4  the reasons set forth below, the court denies Mattson's motion to the extent it requests the entry of an
5  award of benefits, grants Mattson's motion to the extent it requests remand and denies the
6  Commissioner's motion.

## II.  STATEMENT OF FACTS

8  Mattson was fifty-one years old at the time of the claimed onset of her disability. Tr. 96.
9  She has completed high school and one year of college. She obtained a cosmetology license in the
10 early 1970's. Tr. 39, 169. She has past relevant work as an office manager and accounting
11 employee. Tr. 164.

12 Mattson testified that she tried to commit suicide in 1998 and January 2001. Tr. 46-47. She
13 has taken antidepressants since 2001. Tr. 49. She allegedly stopped drinking on February 11, 2001
14 and began attending Alcoholics Anonymous ("AA") meetings six times per week. Tr. 48. After her
15 alleged onset date of January 12, 2001, she worked part-time in 2002 as an accounts payable clerk.
16 Tr. 41. *Id*. She claims that she takes sleeping aids and painkillers and uses a nebulizer for asthma.
17 Tr. 51, 57-58. She also contends that she suffers from pain in her upper extremities and lower back,
18 bronchitis, balance problems, polyneuropathy in her legs, asthma, emotional problems, and
19 headaches. Tr. 44-57.

20 On January 8, 2002 C. E. Gable, M.D., performed a consultative internal medicine
21 examination of Mattson. Tr. 355-60. Dr. Gable noted that Mattson "has recurrent giant urticaria,
22 which . . . she relates to stress." Tr. 355. In addition, Dr. Gable commented that Mattson suffers
23 from back problems, balance problems, asthma, severe hives, and is a recovering alcoholic. *Id*. Dr.
24 Gable observed that although Mattson's muscles, range of motion, grip, and walking were normal,
25 she "becomes very wobbly when trying to walk on heels and toes" and could not bend over and
26 touch her toes. Tr. 357. Dr. Gable concluded that Mattson "can sit 6 hours a day with breaks[,] . . .
27 stand 4 hours a day with usual breaks[,] . . . [and] lift, push, or pull 25 pounds on regular basis." Tr.
28 358.

On September 29, 2003 Robert Gould, M.D., who has treated Mattson since 1999 (Tr. 411), filled out a medical evaluation form on Mattson.  Tr. 411-16.  Dr. Gould diagnosed Mattson with ataxia[2] and carpal tunnel syndrome.  Tr. 411.  Dr. Gould opined that Mattson was "unable to be up for more than [a] couple [of] hours."  Tr. 412.  According to Dr. Gould, Mattson could walk at most one block without pain and sit or stand for only thirty continuous minutes.  Tr. 413.  Dr. Gould noted that Mattson could only sit or stand or walk for less than two hours in an eight-hour workday and could occasionally lift up to ten pounds.  Tr. 413-15.  Dr. Gould also estimated that Mattson would miss work more than four times a month because of her symptoms.  Tr. 415.  He concluded that Mattson was not able to engage in substantial gainful work activity.  Tr. 416.

On September 30, 2003 Susan Harris, M.D., a psychiatrist, examined Mattson.  Tr. 436-46.  Dr. Harris opined that Mattson was moderately restricted in daily living activities, including her concentration, persistence, and pace.  She had episodes of deterioration.  Tr. 442.  Dr. Harris concluded that Mattson was "unable to sustain an adequate level of concentration in a work-like setting due to intermittent anxiety [and] chronic depression [and] pain."  *Id*.

On October 3, 2003 Gene Levitz, M.D., who has treated Mattson since 1993 (Tr. 447), completed a medical source statement about Mattson.  Tr. 447-52.  Dr. Levitz diagnosed Mattson with lumbar disc disease, osteopenic[3] degenerative disease, carpal tunnel syndrome, and chronic bronchitis.  Tr. 447.  Dr. Levitz also noted that Mattson suffered from depression.  Tr. 448.  He estimated that Mattson could not (1) walk more than one block without pain, (2) continuously sit for more than twenty minutes, (3) stand or walk for more than two hours in an eight-hour workday, or (4) lift any amount of weight.  Tr. 449-51.  Dr. Levitz opined that Mattson would miss work more than four times per month.  Tr. 451.  Dr. Levitz concluded that Mattson was not able to engage in substantial gainful work activity.  Tr. 452.

---

[2]   Ataxia is a neurological condition involving the failure of muscular coordination and irregularity of muscular action.

[3]   Osteopenia is the decreased density of a bone.

## III.  LEGAL STANDARDS

To be eligible for Social Security disability benefits, the claimant must be "disabled."  "A claimant bears the burden of proving that an impairment is disabling." *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985).  Disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An impairment for purposes of this definition "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  In addition, a person is disabled only if the impairment is so severe as to preclude not only performance of her previous work, but also, considering her age, education, and work experience, performance of "any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The district court's review of the ALJ's decision is limited.  The Secretary's determination denying benefits will be upheld "if it is supported by substantial evidence and is based on the proper legal standards." *See* 42 U.S.C. § 405(g); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993) (citing *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)).  "The decision will be set aside, however, if the proper legal standards were not applied in weighing the evidence and making the decision even though the findings are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978)).  The Ninth Circuit has defined "substantial evidence" and described the relevant standard of review as follows:

> Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.  Where the evidence is susceptible to more than one rational interpretation, we must uphold the Commissioner's decision.

*Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (internal citations and quotation marks omitted).

## IV.  DISCUSSION

### A.     The Five-Step Sequential Evaluation of Disability

The Commissioner has established a five-step sequential evaluation process to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. If so, the ALJ will find that the claimant is "not disabled," and the claim will be denied. *Id.* §§ 404.1520(b), 416.920(b). Second, the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit her from performing basic work activities. If the claimaint does not, the ALJ will find that the claimant is "not disabled," and the claim will be denied. *Id.* §§ 404.1520(c), 416.920(c). Third, if the claimant is suffering from such an impairment, the ALJ compares the impairment with those in the Listing of Impairments, and if the impairment "meets or equals" an impairment on the Listing, disability is presumed and benefits are awarded. *Id.* § 404, Subpart P, App. 1; §§ 404.1520(d), 416.920(d). If not, the ALJ must determine, as a fourth step, whether the claimant has sufficient "residual functional capacity" to perform her past relevant work. If the claimant has sufficient residual functional capacity, the ALJ will find that the claimant is "not disabled," and the claim will be denied. *Id.* §§ 404.1520(e), 416.920(e). Otherwise, if the claimant meets her burden of showing that she is unable to perform past relevant work, she has established a prima facie case of disability. *See Gamer v. Sec'y of Health and Human Services*, 815 F.2d 1275, 1278 (9th Cir. 1987). In step five, the burden shifts to the Commissioner to prove that the claimant, based on her age, education, work experience, and residual functional capacity, can perform other substantial gainful work. *Id.* §§ 404.1250(f), 416.920(f); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987).

### B.     The ALJ's Findings

The ALJ first noted that Mattson testified that she worked part-time in 2001 and 2002. Tr. 15. The ALJ explained that Mattson's "earnings suggest that at least a portion of this work activity was likely performed at the level of substantial gainful employment." *Id*. However, the ALJ

decided not to deny Mattson's claim "at this level." *Id*. In addition, the ALJ declined to consider whether Mattson's alcohol addiction contributed to her impairments. Tr. 22.

The ALJ found that Mattson's (1) depression, (2) anxiety, (3) polyneuropathy, (4) asthma, (5) mild degenerative disc disease of the lumbar spine, (6) mild-to-moderate degenerative disc disease of the cervical spine, and (7) recovering alcoholism were "severe" but not severe enough to meet or equal an impairment listed in Appendix 1, Subpart P, Regulation No. 4. Tr. 15-17. The ALJ declined to consider Mattson's carpal tunnel syndrome because there was no evidence that it lasted for more than a year. Tr. 16.

The ALJ determined that Mattson retained the residual functional capacity to "perform a significant range of light work activity," including (1) standing and walking up to four hours and sitting up to six hours in an eight-hour workday, (2) carrying up to twenty-five pounds occasionally and ten pounds frequently, (3) making "fine fingering or hand movements." Tr. 17. The ALJ concluded that Mattson could "perform[ ] . . . simple or unskilled work only." *Id*. The ALJ reached this decision by relying primarily on Dr. Gable's report. Tr. 18. The ALJ accorded less weight to the opinions of Drs. Gould and Levitz because "they appear to have been based solely upon the new diagnoses of ataxia and [carpal tunnel syndrome], neither of which is supported by ongoing severe symptoms for 12 continuous months." *Id*. In addition, the ALJ gave little weight to Dr. Harris's opinion, reasoning that she neither "endorse[d] any psychotic symptomatology" nor "check[ed] off the common depressive symptoms of anhedonia[4] or appetite disturbance as symptoms." Tr. 18-19. The ALJ also took issue with "the lack of any supporting treatment notes from Dr. Harris." Tr. 19.

The ALJ also found Mattson's subjective complaints "less than fully credible." Tr. 20. The ALJ questioned Mattson's claimed level of pain because she "did not request stronger pain medication." Tr. 19. The ALJ also noted that although Mattson purported to use a cane, the record did not reflect a prescription for such a device. *Id*. In addition, the ALJ reasoned that Mattson sometimes cooked for herself, shopped, cleaned, did her own laundry, and drove. *Id*. To the extent that Mattson complained of asthma and bronchitis, the ALJ commented that she "reported that she

---

[4]    Anhedonia is an absence of pleasure from those things that usually cause pleasure.

continues to smoke cigarettes against her doctors' wishes." Tr. 19-20. Finally, the ALJ determined that Mattson's symptoms of mental illness had largely vanished after she had stopped abusing alcohol. Tr. 20.

The ALJ relied on vocational expert testimony to conclude that Mattson could not perform her past relevant work. *Id*. The ALJ did not consider whether Mattson's past skills were transferable. Tr. 23. The vocational expert opined that Mattson could work as (1) a cashier, (2) watch person, and (3) security systems monitor. Tr. 22. Applying the Medical-Vocational Guidelines ("grids") of 20 C.F.R. § 404, Subpart P, Appendix 2—which establish certain *per se* rules of disability—the ALJ determined that Mattson was "not disabled." Tr. 22.

### C. Whether the Grids Were Properly Applied

Mattson contends that the ALJ did not properly apply the grids. As a general rule, the ALJ must consider the grids when a claimant suffers from "exertional impairments": problems that relate to her strength. *See* 20 C.F.R. § 404, Subpart P, Appendix 2, §§ 200.00(a) & (e). When a claimant suffers from "nonexertional impairments," the ALJ considers other evidence, such as vocational expert testimony. *Id*. at § 200.00(e)(1). The ALJ must always determine how any such testimony affects the claimant's status under the grids. For example, in *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989), the Ninth Circuit reversed the ALJ's determination that a claimant who suffered from both exertional and nonexertional impairments was "not disabled." The claimant sought benefits for two periods: one after she turned 55 and one before. A vocational expert had testified that the claimant was limited "to at most light work." *Id*. at 1156. Because someone with the claimant's education, work experience, and skills would be automatically "disabled" after the age of 55 under the grids if only capable of light work, the court instructed the Commissioner to award benefits for this period. *Id*. at 1157. In addition, the court noted that someone with the claimant's profile (1) would be "disabled" before turning 55 if only capable of sedentary work but (2) would be "not disabled" if capable of "a full range of light work." *Id*. Because the record did not indicate whether the claimant could perform "the full range of light work," the court remanded this aspect of the case for further proceedings. *Id*. at 1158.

Here, it does not appear that substantial evidence supports the ALJ's determination that Mattson can perform "a full range of light work."  The ALJ concluded that Mattson (1) could perform "a significant range of light work activity, standing and walking up to 4 hours and sitting up to 6 hours each in a an 8-hour work day with normal breaks," (2) could "lift or carry up to 25 lbs. occasionally and 10 lbs. frequently," but (3) "would be limited to . . . simple or unskilled work only."  Tr. 23.[5]  However, the vocational expert's testimony suggests that Mattson can only perform *sedentary* work:

> Q. [W]ould there be other jobs existing in the national or regional economies then that . . . a person [with Mattson's limitations] could perform?
> A. Cashier comes to mind in certain limited situations to where you can stand, sit at option.  Watch person, fixed workstations, would come to mind.  There, too, you could stand and/or sit at your discretion.  Security systems monitor could be contemplated.  Sedentary work but it allows one to stand as nobody is directly supervising and you're away from the public.
> ***
> Q. And the skill level on each of those?
> A. Unskilled.
> Q. And the–are these all sedentary?
> A. *They're considered sedentary-type positions* but they do allow for stand/sit options . . . .  Again, the jobs noted are *all considered sedentary*, although they allow for a stand/sit option.  The individual can stand, in fact, up to six to eight hours of the day in many of those instances *and is not extendable to be considered light*.

Tr. 70-71 (emphasis added).  Thus, the ALJ's conclusion that Mattson could perform a "significant range of light work" does not appear to square with the vocational expert's testimony.  Moreover, even if Mattson could perform some degree of light work, because the grids refer to "the *full range* of light work," the fact that a claimant is capable of only a few types of light work does not necessarily mean that a claimant is capable of "light work."  The ALJ determined that Mattson was "not disabled" under grids rule 202.14.  That Rule dictates that the ALJ find "not disabled" individuals who (1) are 50-54 years old, (2) have at least a high school education, (3) have no transferable skills and (4) are capable of light work.  The vocational expert's testimony does not adequately support the ALJ's determination that Mattson was capable of light work and thus the basis for application of Rule 202.14 is missing.  *Cf. Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir.

---

[5] The Commissioner defines light work as (1) "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," (2) requir[ing] a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

1995) ("Because the Secretary failed to produce evidence that any job categorized as light work was available to [the claimant], but only produced evidence of sedentary work available to him, the use of grid rule 202.14 as a framework for decision making was not based on substantial evidence.").

Mattson urges the court to reverse with instructions to award benefits. Mattson notes that if she is not capable of "a full range of light work," Rule 201.14 mandates that she is "disabled." However, the record needs to be more fully developed before a conclusion as to whether Mattson is disabled can be reached. The ALJ expressly declined to consider whether Mattson's part-time work in 2001 and 2002 affected the scope of Mattson's residual function capacity (Tr. 15), the ALJ did not reach the question of whether Mattson's alcoholism contributed to her impairments (Tr. 22), the ALJ did not consider whether Mattson's past skills were transferable (Tr. 23), the question of whether Mattson could perform a full range of light work may not have been fully explored, and the effect of Mattson's nonexertional impairments was not fully developed.[6] These factors could be outcome-determinative. Therefore, the court remands the case for the ALJ to consider them.

## V.  ORDER

For the foregoing reasons, the court remands the case for further proceedings under sentence four of 42 U.S.C. § 405(g).

DATED:  9/13/06

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

---

[6] "The ALJ has a duty to develop the record in Social Security cases. This duty exists even when the claimant is represented by counsel. Disability hearings are not adversarial in nature. In cases of mental impairments, this duty is especially important." *DeLorme v. Sullivan*, 924 F.2d 841 (9th Cir. 1991) (internal citations omitted).

**Notice of this document has been electronically sent to:**

**Plaintiff:**

Terry LaPorte					tlaporte@ix.netcom.com

**Counsel for Defendant(s):**

Michael A. Cabotaje				Michael.Cabotaje@ssa.gov
Sara Winslow					sara.winslow@usdoj.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     9/13/06					       SPT
						**Chambers of Judge Whyte**

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT REMANDING CASE
04-02477 RMW					10